LEIGH M. CLARK, Retired Circuit Judge.
A jury found this appellant guilty on a trial on an indictment that charged that he “did, with the intent to commit the crime of murder (§ 13A-6-2 of the Alabama Criminal Code) attempt to intentionally cause the death of another person, A.W. Ellis, by shooting him with a pistol, in violation of *603 § 13A-4-2 of the Alabama Criminal Code.” The trial court sentenced him to imprisonment for ten years.
The attorney who represents Booker T. Cooper here did not represent him on the trial of the case. Two of the four issues presented in brief of counsel for appellant are to the effect that “COOPER DID NOT RECEIVE ADEQUATE OR EFFECTIVE ASSISTANCE OF COUNSEL AT HIS TRIAL.” We dispose of these issues adversely to appellant by proceeding in accordance with what was held in Smith v. State, 245 Ala. 161, 16 So.2d 315, 316 (1944), as follows:
“A proceeding for a writ of error coram nobis is in the nature of a new civil suit, and must be filed as part of the proceedings in the case to which it refers, and in the court which rendered the judgment. 24 Corpus Juris Secundum, Criminal Law, § 1606(2), page 146, notes 15 and 16; House v. State [130 Fla. 400, 177 So. 705], supra.”
Another issue presented in brief of counsel for appellant is thus captioned:
“THE TRIAL COURT ERRED IN COMMENTING ON AN ISSUE OF FACT OF THE CASE BEFORE THE JURY.”
The issue is directed at a part of the testimony of Officer John Moore of the Birmingham Police Department while testifying on direct examination by the attorney for the State as to what occurred at the Cooper Lounge, which was operated by defendant, from which we quote the following:
“Around the area of the juke box, were you the only person there?
“A. Yes, as far as I can observe.
“Q. What happened after that?
“A. Officer Ellis was up against the wall and had thrown his service revolver and Officer Ward was in another part of the lounge close by the bar and there was an exchange of gun fire between the front and the back and as soon as the gun fire ceased I asked Officer Ward to throw me the gun, I was in a better position then to do something, so I got Officer Ward’s gun and proceeded back into the back part of the lounge.
“Q. Did you find anyone in the back?
“A. No, I did not.
“Q. When was the next time you saw Mr. Cooper?
“A. After he was placed under arrest inside the club.
“Q. Did you ever get your gun back from Mr. Cooper?
“A. Yes, I did.
“MR. SHEIER [Defendant’s attorney]: I object, Your Honor.
“THE COURT: Well, he got it from Mr. Cooper. Well, did you?
“THE WITNESS: I was not handed the weapon from him.
“THE COURT: Rephrase the question.
“Q. It was later found?
“A. It was later found along with the weapons underneath some steps in the club.
“MS. SMITHERMAN [Assistant District Attorney]: That’s all we have. Would you answer Mr. Sheier’s question.”
In support of the issue now under consideration, appellant’s attorney quotes from the opinions in Johnston v. City of Birmingham, 338 So.2d 7 (Ala.Cr.App.1976), Holmes v. State, 22 Ala.App. 373, 115 So. 849 (1928), and Harper v. State, 420 So.2d 835 (Ala.Cr.App.1982), and concludes his argument as to this issue by the following:
“The above cases set forth the standard concerning conduct of a trial judge commenting on evidence or facts of the case before a jury thereby insuring a defendant a fair and impartial trial. However, when a trial judge, as was done here, makes a statement that connects the gun to the defendant, the judge has caused the jury to be influenced in their decision as to a question of fact and consequently affected the result of Cooper’s trial. The thrust of Cooper’s defense was that he never had a gun, never fired any gun, nor shot at any police (R. 149). When the trial judge said in front of the jury the above-quoted remarks it is the contention of the defendant that the results of his trial were affected because such remarks assume Cooper’s guilt and are a direct comment on an issue of fact re *604 served for the jury. The defendant submits that this cause is due to be reversed and remanded on this point of law, set forth in Harper, supra, Holmes, supra, and Johnston, supra.”
We conclude that nothing said by the trial judge in the instant case was in conflict with what was held in the cases cited by appellant’s attorney and that this particular issue is without merit.
The only other issue presented on appeal is captioned as follows in brief of counsel for appellant:
“THE TRIAL COURT ERRED IN LIMITING DEFENSE COUNSEL’S CROSS-EXAMINATION OF THE STATE’S WITNESS REGARDING THE WHEREABOUTS OF PHOTOGRAPHS.”
The issue is directed at what was stated by the trial court at the conclusion of the testimony of Officer Evans, a witness for the State, as shown by the following:
“MR. SHEIER: Your Honor, at this time, I have no further questions of this witness, but there are existing photographs we would like to have those photographs of the crime scene and examine the witness a little bit more as to those photographs.
“THE COURT: Do you have anything further?
“MS. SMITHERMAN: Nothing further.
“THE COURT: Can you get the photographs, sir?
“THE WITNESS: I can get them if they have to run off another-if they have to run off another set from the negatives.
“(OFF THE RECORD)
“(Whereupon, an off-the-record discussion was held out of the hearing of the jury.)
“CROSS-EXAMINATION (CONTINUED)
“BY MR. SHEIER:
“Q. You mentioned before that you had taken photographs of the establishment, is that correct?
“A. Yes, sir.
“Q. I asked you if they were available, if you had them with you and you answered no, is that correct?
“A. That is correct.
“Q. Do you know where they are now, sir?
“A. No, sir.
“Q. Do you know where the negatives are now?
“A. I hope I know where the negatives are.
“Q. Do you know of your own personal knowledge where they are?
“A. No, sir.
“Q. Do you know where the prints— were prints made from those negatives?
“A. Yes, sir.
“Q. Prints were made?
“A. Yes, sir.
“Q. Do you know where they are now?
“A. Personal knowlege, no, sir.
“Q. Have you searched for them?
“A. No, sir.
“Q. Has anyone searched for them?
“A. Yes, sir.
“Q. Have they been able to find them?
“A. No, sir.
“RE-DIRECT EXAMINATION
“BY MS. SMITHERMAN:
“Q. Officer Evans, once you take the pictures, what do you do with them?
“A. They are turned over to the photography lab where they make prints, they are returned to me and I turn them in to the investigating officer.
“Q. Who was the investigating officer?
“A. Sgt. Gay.
“Q. To your knowledge, where is Sgt. Gay?
“A. Sgt. Gay is recuperating from an operation.
“RE-CROSS EXAMINATION
“BY MR. SHEIER:
“Q. Could you call Sgt. Gay if you wanted to?
“THE COURT: That’s enough, you may step down.
*605 “MS. SMITHERMAN: May he be excused?
“THE COURT: Yes, sir.
“NEXT WITNESS.
“MS. SMITHERMAN: John Moore.
“JOHN MOORE, SWORN, CALLED BY THE STATE.”
We have endeavored to quote herein-above all of the reporter’s transcript of the testimony of Officer Evans “regarding the whereabouts of photographs” that had been taken of that part of Cooper’s Lounge where the alleged crime in the instant case occurred. We are unable to agree with the claim that the trial court erroneously limited “defense counsel’s cross-examination of the State’s witness regarding the whereabouts of photographs.” As a result, we determine this issue also adversely to appellant.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
AFFIRMED.
All the Judges concur, except BOWEN, P.J., who concurs in result only.